# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| CIRCLE K STORES INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SUMMIT FOODS, INC., JOHN DRAIN, | ) |
| DENISE DRAIN MASHBURN, | ) |
| | ) |
| Defendants. | ) |

_____

## COMPLAINT
_____

COMES NOW Plaintiff Circle K Stores Inc. ("Circle K") and files this Complaint against Defendants Summit Foods, Inc. ("Summit"), John Drain ("Drain"), and Denise Drain Mashburn ("Mashburn") and makes the following allegations based upon information and belief:

## I.   PARTIES

1. Circle K is a corporation organized and existing pursuant to the laws of the State of Texas and has its principal place of business located in Phoenix, Arizona.

2. Summit is an Alabama corporation with its principal place of business in Scottsboro, Alabama. At all times relevant hereto, Summit did and is doing business in Tuscaloosa County, Alabama.

18847612.4/010609.0132

3. Drain is an adult resident citizen of Scottsboro, Jackson County, Alabama.

4. Mashburn is an adult resident citizen of Scottsboro, Jackson County, Alabama.

## II.   JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and the parties' citizenship is completely diverse.

6. The amount in controversy is in excess of $75,000 and Circle K is seeking more than $75,000 in damages against Summit.

7. Venue is proper in this Court pursuant to 28 U.S.C § 1391(b)(2) as the events or omissions giving rise to this claim occurred in this judicial district.

## III.   FACTUAL ALLEGATIONS

8. Circle K is the tenant of certain real property in Tuscaloosa County, Alabama located at 6718 Highway 69 S., Tuscaloosa, Alabama 35405 (the "Development"), under a land and building lease for the Development (the "Lease").  Circle K operates a convenience store and motor fuels station at the Development (the "Circle K Store").

9. Circle K, by virtue of its acquisition of The Pantry, Inc., is successor Lessee of the Development and subleases a portion of the Development to Summit

(the "Sublease") for use as a Hardee's Restaurant (the "Premises") as successor Landlord of the Premises. A true and correct copy of the Sublease is attached as Exhibit A.

10. On or about June 2, 2020, a fire originated and emanated from the kitchen area of the Premises and spread to the Development, including the Circle K Store.

11. As a result of the fire, Circle K sustained substantial damage to the Circle K Store, including the roof structure, the store itself, its contents (including all of its merchandise and its equipment) and the Circle K canopy.

12. The fire caused the cessation of operations of the Circle K store from June 2, 2020 until May 17, 2021 as a result of the extensive repairs required to the damaged portions of the Development. Because Circle K could not continue its operations during this period, it lost fuel sales and store sales during this period.

13. Although Circle K was deprived of its right to operate during this period, its rent obligation under the Lease was not tolled and it was required to and did pay rent for the period from June 2, 2020 to May 17, 2021.

14. The obligation of Summit to make rent payments to Circle K pursuant to the Sublease was not tolled as a result of the fire and Summit was required to continue its rent payments. However, Summit ceased making its rent payments and

has not paid rent pursuant to the Sublease since October, 2020. During that period, Summit has also failed to pay for electrical charges applicable to the Premises.

15. Circle K commenced and diligently pursued repair, replacement and restoration of its portion of the Development and the Premises (for the benefit of Summit), as required of Circle K under the Lease.

16. Despite demand for payment for the damage to the Circle K Store, the loss of its merchandise and equipment, the rent it paid while out of operation, the loss of fuel sales and store sales for nearly a year, and its repairs to the Premises, Summit refused to pay Circle K for the damages it caused and failed to pay its rent, and other charges, necessitating this action.

## IV.   COUNTS OF THE COMPLAINT

### COUNT ONE
### (Negligence)

17. Circle K repeats and incorporates herein by reference the allegations contained in paragraphs 1-16 as if fully set forth herein.

18. Summit has committed acts of negligence that have caused damage to Circle K, by (among other things) failing to adequately and safely maintain the Premises so as to prevent fire from originating at the Premises and thereafter spreading to damage Circle K's store and property.

19. Summit has a duty to take ordinary care not to allow a fire to (i) emanate from its business operations at the Premises and (ii) spread to neighboring facilities in the Development, including the Circle K Store. Without limitation, the City of Tuscaloosa Fire Department Incident Report, states that the fire originated at the kitchen area of the Hardee's at a "vent over the flame broiler," and spread throughout the Premises and thereafter to the Circle K store.

20. Summit breached that duty when it allowed a fire on the Premises to originate at the Premises (during business hours) and spread to the Development, including the Circle K Store.

21. As a direct and proximate result of Summit's breach of its duty, Circle K was harmed by this fire, which damages include, but are not limited to, (i) sustaining substantial damage to the Circle K Store, including the store itself, its contents, its equipment, and its canopy, (ii) the loss of its merchandise in the Circle K Store at the time of the fire, (iii) paying a year's worth of rent for a site from which it could not operate, and (iv) the loss of nearly a year's worth of fuel sales and store sales.

22. But for Summit's breach of duty, Circle K would not have been harmed.

WHEREFORE, PREMISES CONSIDERED, Circle K demands judgment against Summit for compensatory damages in an amount to be shown at trial (and in excess of $75,000), interest thereon, and punitive damages.

## COUNT TWO
### (Breach of Contract)

23. Circle K repeats and incorporates herein by reference the allegations contained in paragraphs 1-16 as if fully set forth herein.

24. The Sublease, which is a valid contract binding Circle K and Summit, required that Summit was responsible for all damage caused by the gross negligence or willful misconduct of its agents, servants, or employees. Specifically, Section 8 of the Sublease provides:

> [Summit] shall repair, replace, maintain and be solely responsible for any damage or destruction to any of the Development caused by the gross negligence or willful misconduct of [Summit] or [Summit's] agents, servants or employees.

Exhibit A, Section 8.

25. The City of Tuscaloosa Fire Department Incident Report, states that the fire originated at the kitchen area of the Hardee's at a "vent over the flame broiler," and spread throughout the Premises and thereafter to the Circle K store.

26. The failure of Summit to adequately and safely maintain the flame broiler and the vent constitutes a conscious indifference to the consequences of its failure to act and a grossly careless disregard for the safety and welfare of others, including Circle K.

27. The fire emanating from the Premises was the result of gross negligence or willful misconduct by Summit or its agents, servants or employees.

28. Summit did not repair, replace or otherwise resolve the damage to the Development caused by the gross negligence or willful misconduct caused by it or its agents, servants, or employees. This conduct by Summit constitutes a breach of the Sublease. Circle K has expended substantial sums to replace equipment, restore the Premises and restore its store building and canopy.

29. As a result of Summit's breach of the Sublease, Circle K has suffered extensive damages and losses, including, but not limited to, (i) sustaining substantial damage to the Circle K Store, including the store itself, its contents, its equipment, and its fuel canopy, (ii) the loss of its merchandise in the Circle K Store at the time of the fire, (iii) paying a year's worth of rent for a site from which it could not operate, and (iv) the loss of nearly a year's worth of fuel sales and store sales. These damages are in excess of $75,000.

30. The Subcontract also provides that Circle K is entitled to recover its reasonable attorney's fees, costs and other expenses incurred as a result of filing suit to collect amounts due under the Subcontract. Exhibit A, Section 15(f).

WHEREFORE, PREMISES CONSIDERED, Circle K demands judgment against Summit for compensatory damages in an amount to be shown at trial (and in

excess of $75,000), interest thereon, its attorney's fees, costs and expenses incurred in this action, and such other relief as the Court deems just and proper.

## COUNT THREE
### (Breach of Contract)

31. Circle K repeats and incorporates herein by reference the allegations contained in paragraphs 1-16, 23-30 as if fully set forth herein.

32. Summit was required to maintain certain insurance coverages throughout the lease term. Specifically, the Sublease provides:

> [Summit] shall, at [Summit's] own expense, keep in force and effect during the entire Lease Term public liability insurance insuring [Summit] and [Circle K] against any liability that may accrue against any of them for personal injury, death or property damage resulting from any occurrence in or about the Premises during or in consequence of [Summit's] occupancy thereof.  Liability Insurance shall be in general policy limits not less than $1,000,000.00

Exhibit A, Section 11.

33. Summit did not keep and maintain the public liability insurance as contractually required, constituting a breach of the Sublease.  Circle K has expended substantial sums to replace equipment and inventory, restore the Premises and restore its store building and canopy.

34. As a result of Summit's breach, Circle K has suffered damages including, but not limited to, (i) sustaining substantial damage to the Circle K Store, including the store itself, its contents, its equipment and its canopy, (ii) the loss of

its merchandise in the Circle K Store at the time of the fire, (iii) paying a year's worth of rent for a site from which it could not operate, (iv) the loss of nearly a year's worth of fuel sales and store sales, and (v) costs incurred in repairing the damages to the Premises (including, but not limited to, the Hardee's shell).

35.   Circle K is also entitled to its reasonable attorney's fees, costs and other expenses as a result of having to pursue Summit in litigation.  Exhibit A, Section 15(f).

WHEREFORE, PREMISES CONSIDERED, Circle K demands judgment against Summit for compensatory damages in an amount to be shown at trial (and in excess of $75,000), interest thereon, its attorney's fees, costs and expenses incurred in this action, and such other relief as the Court deems just and proper.

## COUNT FOUR
### (Breach of Contract-Drain)

36.   Circle K repeats and incorporates herein by reference the allegations contained in paragraphs 1-16, 23-35 as if fully set forth herein.

37.   Drain executed a guaranty of the Sublease and Summit's Sublease obligations to Circle K (the "Guaranty"). Drain agreed to pay to and indemnify Circle K against all damages that might arise because of a default by Summit, including, without limitation, all reasonable attorneys' fees and disbursements

9

incurred by Circle K or caused by any default and/or the enforcement of the guaranty. A true and correct copy of the Guaranty is attached as Exhibit B.

38. Drain did not perform his duties under the Guaranty.

39. As a result of Drain's failure to perform his obligations under the Guaranty, Circle K has suffered damages including, but not limited to, (i) sustaining substantial damage to the Circle K Store, including the store itself, its contents, its equipment and its canopy, (ii) the loss of its merchandise in the Circle K Store at the time of the fire, (iii) paying a year's worth of rent for a site from which it could not operate, (iv) the loss of nearly a year's worth of fuel sales and store sales, (v) costs incurred in repairing the damages to the Premises (including, but not limited to, the Hardee's shell), and (vi) loss of rental payments from Summit.

40. Circle K is also entitled to its reasonable attorney's fees, costs and other expenses as a result of having to pursue Summit and Drain in litigation. Exhibit A, Section 15(f), Exhibit B.

WHEREFORE, PREMISES CONSIDERED, Circle K demands judgment against Drain for compensatory damages in an amount to be shown at trial (and in excess of $75,000), interest thereon, its attorney's fees, costs and expenses incurred in this action, and such other relief as the Court deems just and proper.

## COUNT FIVE
### (Breach of Contract-Mashburn)

41. Circle K repeats and incorporates herein by reference the allegations contained in paragraphs 1-16, 23-40 as if fully set forth herein.

42. Mashburn executed a guaranty of the Sublease and Summit's Sublease obligations to Circle K (the "Guaranty"). Mashburn agreed to pay to and indemnify Circle K against all damages that might arise because of a default by Summit, including, without limitation, all reasonable attorneys' fees and disbursements incurred by Circle K or caused by any default and/or the enforcement of the guaranty. A true and correct copy of the Guaranty is attached as Exhibit B.

43. Mashburn did not perform her duties under the Guaranty.

44. As a result of Mashburn's failure to perform her obligations under the Guaranty, Circle K has suffered damages including, but not limited to, (i) sustaining substantial damage to the Circle K Store, including the store itself, its contents, its equipment and its canopy, (ii) the loss of its merchandise in the Circle K Store at the time of the fire, (iii) paying a year's worth of rent for a site from which it could not operate, (iv) the loss of nearly a year's worth of fuel sales and store sales, (v) costs incurred in repairing the damages to the Premises (including, but not limited to, the Hardee's shell), and (vi) loss of rental payments from Summit.

45. Circle K is also entitled to its reasonable attorney's fees, costs and other expenses as a result of having to pursue Summit and Mashburn in litigation. Exhibit A, Section 15(f), Exhibit B.

WHEREFORE, PREMISES CONSIDERED, Circle K demands judgment against Mashburn for compensatory damages in an amount to be shown at trial (and in excess of $75,000), interest thereon, its attorney's fees, costs and expenses incurred in this action, and such other relief as the Court deems just and proper.

Respectfully submitted,

FENNEMORE

By: _____
TODD S. KARTCHNER
*Pro Hac Vice Application to be submitted.*

OF COUNSEL:

FENNEMORE
2394 E Camelback Rd
Suite 600
Phoenix, AZ 85016

/s/ *Lynne Stephens O'Neal*
LYNNE STEPHENS O'NEAL
JIM H. WILSON

Attorneys for Plaintiff Circle K Stores Inc.

OF COUNSEL:

LEITMAN, SIEGAL & PAYNE, P.C.
1927 1st Avenue North, Suite 101
The Woodward Building
Birmingham, AL 35203
205.251.5900

12

13

loneal@lsppc.com
jwilson@lsppc.com